UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| RORY SHELTON | ) | CRIMINAL NO. 20-30 |

DEFENDANT'S SENTENCING MEMORANDUM AND

REQUEST FOR DOWNWARD VARIANCE

I. AUTHORITY

A sentencing court must follow the three-step process set forth by *Gall v. United States*, 552 U.S. 38 (2007). First, the court must properly determine the guideline range. Second, the court must determine whether to apply any of the guidelines' departure policy statements to adjust the guideline range. Third the court must consider all the factors set forth in 18 U.S.C. Section 3353 (a) as a whole, including whether a variance is warranted.

The sentence guidelines reflect a rough approximation of sentences that may achieve the goals of 18 U.S.C. § 3553 (a)'s objectives. The sentencing judge may consider that the Guideline sentence should not apply to a particular defendant because the Guideline fails to adequately reflect § 3553 (a) considerations. Specific characteristics of individual defendants, which district courts were once prohibited or discouraged from considering may now be considered. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines . . . These are, however, matters that § 3553(a) authorizes the sentencing judge to consider. See, *Rita v. United States,* 127 S.Ct. 2456 (2007).

18 U.S.C. §3553(a) begins with the broad mandate that sentencing courts "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection". This directive, commonly called "sentencing parsimony" is defined as the least restrictive sentence necessary to achieve the purposes of sentencing. *United States v. Dragon*, 471 F.3d 501 (3d Cir. 2006). That section further states that sentencing courts must take into account a number of factors and give meaningful consideration to and reasonably apply those factors to the circumstances of the case when sentencing a defendant.

The trial court must consider all of the applicable factors but that does not mean that the factors must be weighted equally. The court is permitted to give "great weight" to one factor over others. The decision as to how much weight to assign a particular factor is committed to the sound discretion of the trial court and importantly "if the sentence is outside the guideline range, the reviewing court may not apply a presumption of unreasonableness." *Gall v. United States*, 552 U.S. 38, at 51, 57 (2007).

A trial court should not sway from imposing its independent judgment in such considerations and great deference is given to the trial court "because it is in the best position to tailor a sentence to a particular defendant and his offense." See *United States v. Vargas*, 477 F.3d 94 (3d Cir. 2006) at 101, *United States v. Lloyd*, 469 F.3d 319 (3d Cir. 2006); *United States v. Dragon*, 471 F.3d 501 (3d Cir. 2006).

## II GUIDELINE CALCULATIONS

The appropriate guideline for the offense conduct is found in USSG §2G2.2. The base offense level is 18. USSG §2G2.2(a)(2). Mr. Shelton receives a 2-point increase due to images of prepubescent minors. USSG 2G2.2(b)(2). Mr. Shelton receives a 4-point increase due to the images containing sadistic or masochistic material. USSG § 2G2.2(b)(4). This is particularly heavy handed in light of the very few images that contained items that would be identified as sadistic of masochistic. Mr. Shelton receives a 2-point increase due to the images being found on his phone. USSG § 2G2.2(b)(6). He receives a 5-point increase due to the number of images and

videos exceeding 600 due in large part to the number of video files found deleted. He receives a 3-point reduction for timely acceptance of a guilty plea pursuant to USSG § 3E1.1(a) and (b). The total offense level is 28.

Mr. Shelton has a criminal history score of 3 which equates to criminal history category of II. Based upon a total offense level of 28 and a criminal history category of II, the guideline imprisonment range of 87 months to 108 months.

In June 2021 the US Sentencing Commission published a report on Non-Production Child Pornography Offenses. The 100-page report had some very interesting findings.

First, facilitated by advancements in digital and mobile technology, non-production child pornography cases increasingly involve voluminous quantities of videos and images that are graphic in nature often involving the youngest victims. In 2019, these child pornography cases involved a median number of 4,265 images with some offenders possessing millions of images and videos. Over half (52.5%) included images of videos of infants, or toddlers and nearly every offense (99.4%) included prepubescent victims.

Second, section 2G2.2 contains a series of enhancements, accounting for a combined 13 offense levels, that covers conduct that has become so common that they now apply in the vast majority of cases. For example, in 2019, over 95% received enhancements for use of a computer and for the age of the victims depicted under the age of 12. The enhancement for images depicting sadistic or masochistic conduct or abuse of an infant or toddler occurred in 84% of cases or having 600 or more images occurred in over 77% of cases.

Third. Courts are increasingly applying downward variances in response to the high guidelines that apply due to the enhancements. Enhancements were never intended to apply to the majority of cases. They were intended for the more serious cases. In 2019, less than a third of non-production defendants received a sentence within the guidelines.

Fourth. In 2019 the average sentence for non-production possession of child pornography was 71 months. The average was 134 months for offenders who also engaged in aggravated

sexual conduct. The full report can be found at www.ussc.gov. The synopsis of highlights as shown on the web site are attached hereto and marked as Exhibit 1. In 2019 only 30% of defendants being sentenced for non-production child pornography sentences received sentences within the sentencing guidelines.

Many courts, including the Third Circuit have recognized that the sentence guidelines pertaining to receipt of pornography are not entitled to great deference because they are not based on empirical data. Section 2G2.2 was not developed pursuant to the Sentencing Commissions institutional role and based on national experience, but instead was developed largely pursuant to congressional directives. US V. GROBER, 624 F.3D 592 (3RD. CIR. 2010).

In US V. D.M., 942 F.SUPP.327 (E.D. N.Y. 2013), the guideline range for the possession of child pornography was 78-97 months. The court gave the defendant a 5-year probation sentence. With regard to the guidelines, the court observed:

> The Court of Appeals for the First, Second, Third and Ninth Circuits-as well as district courts-have expressly recognized what little deference the child pornography guidelines are owed. Widespread criticism from the judiciary and others support the Sentencing Commission's recent proclamation that "it concurs with the many stakeholders who contend that the *sentencing guideline scheme should be revised* to better reflect technological changes in the offense conduct and emerging social science research and also better account for the variations in offenders' culpability and sexual dangerousness. Rationales for child pornography Guidelines for non-production have been shredded. The court went on to say that not applying the guidelines in the case was supported by concerns expressed by intermediate appellate courts, district courts, the Sentencing Commission, the United States Department of Justice and others. The court emphasized that the child pornography guidelines are different than most and unless applied with great care can lead to unreasonable sentences that are inconsistent with what § 3553 requires. Citations omitted. US v. D.M. at 351-352.

See also, *DECONSTRUCTING THE MYTH OF CAREFUL STUDY: A PRIMER ON THE FLAWED PROGRESSION OF THE CHILD PORNOGRAPHY GUIDELINES,* available at http://sentencing.typepad.com (June 10, 2008). It is explained how Congress despite recommendations to the contrary has repeatedly amended USSG § 2G2.2 to target mass producers of child pornography and repeat abusers but those classes of offenders make up less than 5% of those affected by the changes. The flaw of § 2G2.2 is that the average defendant charts at the statutory maximum regardless of Acceptance of Responsibility and Criminal History.

Guideline section 2G2.2 is the product of arbitrary legislation by Congress, rather than the careful research and study of the Sentencing Commission. The ratcheting up of the base offense level and the addition of new enhancements (number of images) were often opposed by the Sentencing Commission as having no basis in empirical research. See, United States Sentencing Commission, *The History of the Child Pornography Guidelines at 18-21,42-48* (Oct.2009).

### III. SECTION 3553 FACTORS

#### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Shelton entered a plea of guilty to count 1 of the indictment for a violation of 18 U.S.C. §§ 2252(a)(4)(B). Mr. Shelton maintains that he was not actively seeking out child pornography. He maintains that people in chat rooms sent him the pornography without solicitation. There is no evidence to refute this assertion. The evidence in this matter was retrieved from Mr. Shelton's phone. There was no evidence that he actively sought out relationships with females under the age of consent or that he was involved with any minor females other than the one from Kentucky that led to his state charges.

#### B. HISTORY AND CHARACTERISTICS OF MR. SHELTON

Mr. Shelton is 59 years old. He was raised in the home of his mother and father until the age of 12. His parents separated at age 12. He reports his father was a physically abusive alcoholic. He dropped out of high school after the ninth grade. He later earned a GED. He was

previously married for 13 years from 1980-1993. He has a total of 5 children but questions the paternity of two of them due to infidelity issues of the mother. He had a long-term relationship with Louanne Yeager from 2003 until 2015. She was his fiancé. Tragically, she died during a heart valve procedure in 2015. Thereafter, he has been living in a 1 room apartment without any significant other. He worked at English Lane Nursery for several years from 2005 until 2008. Prior to his incarceration he worked on the side doing odd construction work and lawn care. He reports using marijuana from an early age and continuing throughout his life. He has also experimented with other drugs and reports completing an outpatient treatment program in 2011. He suffered a stroke in 2004 and a heart attack in 2008 that prompted his leaving employment at the Nursery. He has high blood pressure and high cholesterol and is prescribed medications for those conditions. He has no history of mental health treatment.

Courts have considered that age of the defendant is a relevant factor in considering a variance. In US V. GRAY, 453 F.3D 1323 (11TH CIR. 2006), in a child pornography distribution case with low end of the range being 151 months, the court varied to 72 months based on factors such as the age of the defendant (64), lack of criminal record and medical issues. Similarly, Mr. Mr. Shelton will turn 60 this year, lacks a significant recent criminal history and is dealing with medical issues and has a history of stroke and heart attack.

Courts have also considered a variance as appropriate when it has the authority to monitor the defendant for the rest of his life on supervised release. In US V. HANSON, 561 F.SUPP.2D 1004 (ED WISC. 2008) the court when faced with a guideline range of 210-262 in a child pornography case gave the defendant 72 months in part due to the ability to monitor the defendant for life on supervised release. Likewise, in this case, Mr. Shelton can be placed on supervised release for life.

Mr. Shelton submits that it is very appropriate for him to receive a variance below the advisory guidelines for many reasons. First, because the guidelines as constructed are flawed and that seems to be accepted by most courts and the sentencing commission. Second, is his age. Third, is his health history. Fourth, is his lack of recent criminal history. Fifth, is the manner in

which he received the child pornography. He did not seek it out or pay for it. This is a significant difference from the defendant in the case primarily relied upon by the government in its sentence memorandum. The defendant in GOFF, paid to download his child pornography from a child pornography web site. US. V GOFF, 501 F.3D 250 (3RD. CIR. 2007) fn. 6.

     As referenced earlier, the data recently published by the sentencing commission indicated that the average sentence for non-production possession of child pornography was 71 months. It is the position of Mr. Shelton that a sentence without applying any enhancements is appropriate. It is clear that enhancements are supposed to be utilized when the case at issue has elements that make it different than the ordinary case. Enhancements are items that make a criminal incident more aggravating. It is clear from the recent study that the enhancements at issue are part of a garden variety case of child pornography possession. Without any enhancements the range would be an offense level of 15 and criminal history category of II for a range of 21 to 27 months. The range with full enhancements is 87 to 108 months. In Pennsylvania the statute for Possession of Child Pornography can be found at 18 Pa. C.S.A. § 6312 (d). It is graded as a Third-Degree Felony for first offenders. The maximum penalty for Felony Three is 7 years. Under the Pennsylvania Sentence Guidelines Mr. Shelton's range for his minimum sentence would be 24-30 months due to his prior record accumulated nearly 40 years ago. Mr. Shelton submits this court's sentence should vary significantly toward the range without enhancements.

     Mr. Shelton believes this court should consider handling this matter similarly to the New Jersey District Court did in US V. MICHAEL MAGUIRE, CR. No. 2009-665, and affirmed by the Third Circuit Court of Appeals at 10-4386. In that case the defendant was charged with possession like Mr. Shelton. Like Mr. Shelton his base offense level was 18 and he had all the same enhancements. Just like Mr. Shelton, this resulted in an adjusted offense level of 28 after his 3-point reduction for entering a timely plea. The defendant in McGuire had a criminal history category of I. The advisory guideline range was 78 to 97 months. The District Court determined that the 2-point enhancement for use of computer and the 5-point enhancement for number of images should not be considered because use of computer is synonymous with the crimes and the number of images does not make the crime worse. The court used an offense level of 21 and

guideline range of 37 to 46 months. The court imposed a sentence of 42 months. The defendant appealed and it was affirmed as reasonable.

### C. THE RECOMMONDED SENTENCE RELECTS THE SERIOUSNESS OF OFFENSE AND PROMOTE RESPECT FOR THE LAW

Mr. Shelton understands the serious nature of his actions and the evils of child pornography. The sentence he is requesting clearly reflects the seriousness of the offense and promotes respect for the law as he is asking for a reasonable sentence within the range that courts have most recently been sentencing defendants that are similarly situated in consideration of the lack of deference now being given the advisory guidelines in such cases while being mindful of the factors mitigating in his favor for a variance from the advisory guideline range. Years of incarceration and supervised release for up to life is a significant punishment, especially for someone that is Mr. Shelton's age.

### D. THE REQUESTED SENTENCE PROVIDES ADEQUATE DETERRENCE

The recommended sentence clearly provides adequate deterrence as Mr. Shelton would still spend years in jail and the balance of his life on supervised release. Considering the circumstances of this case that seems like a significant penalty that would deter anyone with reasonable sensibilities.

### E. THE PUBLIC WOULD BE PROTECTED ADEQUATELY BY THE REQUESTED SENTENCE

This section requires the court to consider the need for the sentence to protect the public from further crimes of the defendant. It deals with both recidivism and potential danger to the public. The Sentencing Commission's studies indicate many factors correlate with reduced rates of recidivism. Age is powerful predictor. Persons under 21 have a three times greater likelihood of recidivism as persons over the age of 50. Recidivism rates decrease as educational levels increase. Persons with strong familial relationships are less likely to recidivate. Non-violent offenders are the lease likely to recidivate. Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines. (2004) at 11-13 and Exhibits 9,10 and 11.

Mr. Shelton is 59 years old. He has no history of violence. He did not solicit or seek out the child pornography. There is every reason to believe that going forward he is not a risk to recidivate.

### F. THE NEED FOR EDUCATIONAL AND VOCATIONAL TRAINING

Mr. Shelton may benefit from educational or vocational training but the reality of his age and health makes it unlikely he will gain any additional skills that would make him a productive member of the workforce. He has earned income most recently by doing construction and lawn maintenance and will hopefully be able to resume supporting himself through those activities after serving his sentence.

### G. THE NEED TO AVOID SENTENCING DISPARITIES.

The requested sentence does not create sentence disparities. As discussed earlier, the requested sentence is consistent with the most recent sentencing decisions across the country in Federal Court based on the recent report of the Sentencing Commission. Moreover, Mr. Shelton would be subject to a minimum sentence in the range of 24-30 months had he been charged in

state court in this matter. See, 204 Pa. Code §§ 303.7, 303.15 and 303.16a. The vast majority of courts are now varying from the Guidelines in these non-production type cases. Thus, a sentence within the advisory guideline range is disparate from the majority of similarly situated defendants.

## H. TYPES OF SENTENCES AVAILABLE

The maximum penalty is twenty years. Mr. Shelton is eligible for probation due to the charge being a Class C felony but ineligible for probation if sentenced within the advisory guideline range in Zone D. The court may impose a period of supervised release of not less than 5 years to life. There is mandatory restitution for identified victims. In this matter those 3 identified victims have agree to restitution of $3,000.00 through their counsel.

## I. CONCLUSION

Mr. Shelton requests this honorable court to pronounce a sentence which varies downward from the guidelines for the myriad of reasons discussed herein. Mr. Shelton submits that this court should utilize a guideline range that does not use any of the enhancements because in addition to the flawed history without empirical data supporting there use, as the most recent study shows, they have become the norm for such crimes and therefore are not unique to the extent that an enhanced sentence is appropriate. A base offense level of 15 with the criminal history category of II yields a guideline range of 21 to 27 months. Of course, the court may place Mr. Shelton on supervised release for the life to ensure he is not engaging in any unlawful conduct. Regardless of the sentence the court imposes, Mr. Shelton requests this court pursuant to USSG § 5G1.3(d) and 18 U.S.C. § 3584 run his sentence concurrently with the sentence at Allegheny County Docket No. 19-6231.

Respectfully submitted,

<u>/s/ Neil E. Rothschild</u>
Neil E. Rothschild
103 Moran Street
Oil City, Pa. 16301
Pa. I.D. No. 50083